LILLIAN ELIZABETH HASKELL *v.* MIDDLE STATES PETROLEUM CORPORATION, &C.

(*January* 16, 1933.)

PENNEWILL, C. J., and RODNEY, J., sitting.

*Ivan Culbertson* for plaintiff.

*Charles F. Curley* and *James M. Malloy* for defendant.

Superior Court for New Castle County, No. 137, September Term, 1932.

PENNEWILL, C. J., delivering the opinion of the Court:

The above case is before the Court on demurrer to the second, fourth and sixth counts of plaintiff's declaration.

These counts allege that the plaintiff was lawfully possessed of 150 shares of common and 50 shares of preferred capital stock of the Bethlehem Chemical Company of the value of $100,000; that the plaintiff casually lost the said stock; that the stock came into the possession of the defendant by finding; that a demand was made by the plaintiff upon the defendant for the return of the stock and the defendant refused to return it.

The ground of defendant's demurrer is, that stock, as distinguished from a certificate representing stock, is not a chattel for the conversion of which an action of trover will lie.

The only question, therefore, presented is whether shares of corporate stock are subject to conversion under the law of this state?

It must be conceded that corporate stock was incapable of conversion at common law, and is so in this

state, which is under the common law, unless by statute it is made personal property that may be taken into possession. This is not denied by the plaintiff. But the plaintiff contends that the rule of the common law respecting shares of stock has been so changed by the statute law of this state that such stock must now be regarded as personal property capable of conversion, and that an action of trover will lie for the conversion.

The defendant admits that very few of the states now adhere to the common law theory that shares of stock are so intangible as to be incapable of identification. The plaintiff claims that no state, except, possibly, Pennsylvania now follows the common law respecting conversion of shares of stock. But whatever may be the law elsewhere we think it is clear that under the statute law of this state there may be a conversion of shares of stock.

*Section* 16 of the *General Corporation Law* of this state (*Revised Code* 1915, § 1930) provides that

"The shares of stock in every corporation shall be deemed personal property and transferable on the books of the corporation in such manner and under such regulations as the By-Laws provide."

And by *Section* 95 of *Chapter* 65 (*Section* 2009) of the *Revised Code* (as amended by 33 *Del. Laws, c.* 105) it is provided that:

"The shares of any person in any incorporated company, with all the rights thereto belonging, * * * may be attached for debt, or other demands; and so many of said shares * * * may be sold at public vendue, to the highest bidder, as shall be sufficient to satisfy the debt, or other demand," &c.

Under these statutes shares of corporate stock are not only made personal property, but property that may be identified, attached and sold for the payment of the debts of the owner. So, it may be said that shares of stock have no longer, in this state, the characteristics that made them incapable of conversion at common law.

The defendant seeks to make a distinction between

a certificate for shares and shares. But the fallacy of such distinction is apparent when it is conceded, as it must be under well settled law, that a person may be the legal owner of stock even though he has received no certificate; therefore, the certificate is only evidence of ownership. And so, defendant's contention that the company might be liable for conversion where a certificate has been issued but not where no certificate was issued, even though the stock was paid for, cannot be sustained. *Bowers Law of Conversion,* §§ 21, 144, &c.

In *Jellenik v. Huron Copper Mining Co.,* 177 *U. S.* 1, 20 *S. Ct.* 559, 563, 44 *L. Ed.* 647, the court considered a Michigan statute which provided that

"The stock of every such corporation shall be deemed personal property, and shall be transferred only on the books of the company," &c.

It was held that the shares of stock were personal property in the state of the residence of the corporation and could be taken in execution or reached by attachment.

The defendant insists that the Delaware statute which makes shares of stock liable to attachment was enacted for one specific purpose, and does not enlarge the scope of the action of trover. In this connection the case of *Fowler v. Dickson,* 1 *Boyce* 113, 74 *A.* 601, 606, is cited. In that case the question raised was whether shares of stock could be attached under *Section* 4 of *Chapter* 104 of the *Revised Code* (1893) as any other personal property, goods or chattels, rights and credits. The Court said:

"Whether or not shares of stock are given by the general corporation laws a definite status as property, in the case before the court it appears that the shares in question were not attached as shares contemplated under *Chapter* 70 of the *Revised Code* [1893] and in the manner prescribed by that statute  *  *  *  and it does not appear that they were attached in a manner prescribed by any statute."

In that case the Court did not pass upon the question involved here, but held that the writ of attachment that was issued was improperly executed.

384

The case of *Hunt, Receiver, v. Drug, Inc.*, recently decided in the Superior Court, and now pending in the Supreme Court of this state, 5 *W. W. Harr.* (35 *Del.*) 332, 165 *A.* 552, was a suit in trover for the conversion of shares of corporate stock. The case was ably and strenuously tried on both sides, on other grounds, but the question whether such shares were capable of conversion in this state was not raised.

The demurrer is overruled.